## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BUNNY'S CABARET, LLC,

      Plaintiff,

v.                                 Case No: 8:23-cv-2534-CEH-NHA

PINELLAS COUNTY,

      Defendant.

_____/

## ORDER

    This matter comes before the Court on Plaintiff Bunny's Cabaret, LLC's Motion for Preliminary Injunction (Doc. 16). In the motion, Bunny's Cabaret seeks a preliminary injunction enjoining enforcement of Sec. 6-29 of the Pinellas County Code. Defendant Pinellas County has responded in opposition. Doc. 21. The Court heard argument on the motion on February 13, 2024, and conducted an evidentiary hearing on April 2, 2024. Having carefully considered the motion and response, the parties' exhibits, the witnesses' testimony, heard argument of counsel, and being otherwise fully advised in the premises, the Court will deny Plaintiff's Motion for Preliminary Injunction.

## I.    BACKGROUND

### A.    Factual Background

    Plaintiff, Bunny's Cabaret, LLC (Plaintiff or "Bunny's") opened in March 2020 originally as a "Gentlemen's Club" with a beer and wine license. Doc. 1-1 ¶¶ 13, 14.

At some point later, Bunny's obtained a full liquor license, which it used in compliance with restrictions pertaining to "adult uses." *Id.* ¶ 15. On November 15, 2021, Bunny's gave up its liquor license and obtained a bottle club license to facilitate its goal of presenting late-night entertainment. *Id.* ¶¶ 16–19; *see* Doc. 1-1 at 25–26. A "Bottle Club" is a commercial establishment that operates for profit where patrons can consume alcohol brought on the premises but not purchased there. Doc. 21 at 3; Doc. 1-1 at 25–26. Bunny's has a policy in place that during the hours from 3:00 a.m. to 8:00 a.m., possession or consumption of alcohol on the premises is prohibited. Doc. 1-1 ¶ 18. This policy is posted throughout the building. *Id.*; Doc. 16-1 at 2.

Currently, Bunny's operates as an entertainment venue in Pinellas Park where local musical and R&B artists come together to perform on stage before a live audience. Doc. 1-1 ¶ 19. Bunny's describes the late-night characteristics of its entertainment to convey not just the music but also as an expression and communication of non-conformity, energy, rebelliousness, and stamina. Doc. 16-1 at 2; Doc. 16-2 at 2.

Throughout 2023 from February through September, Bunny's received citations from the Pinellas County Sheriff's Office ("PCSO") for violations of Section 6-29 of the Pinellas County Code. Doc. 1-1 ¶¶ 20–29. Section 6-29 mandates, in relevant part, the closing of all business establishments "dealing in alcoholic beverages" from the hours of 3:00 a.m. to 8:00 a.m. on each day of the week. Bunny's was ordered to close by the PCSO, and Bunny's acting manager was cited for violations of the Pinellas

2

County Code Sec. 6-29 on February 19, 2023; March 4, 2023; May 6, 2023; June 4, 2023; June 10, 2023; August 19, 2023; August 25, 2023; August 26, 2023; August 31, 2023; and September 2, 2023.  *See* Doc. 1-1 ¶¶ 19–29; *see also* Doc. 1-1 at 27–35.

Bunny's seeks injunctive relief, arguing Sec. 6-29 is unconstitutional because it prohibits free exercise of speech, freedom of association of "like-minded" individuals, and free presentation of artistic expression, which includes being able to present artistic performances between the hours of 3:00 a.m. and 8:00 a.m., which is an essential component of the "late night" entertainment. Doc. 16.

### B.    Procedural Background

In September 2023, Bunny's brought this action, under 42 U.S.C. § 1983, in state court against Defendants Pinellas County (Defendant or "Pinellas County") and Bob Gualtieri ("Gualtieri"), in his official capacity as Sheriff of PCSO, for alleged violations of First Amendment, equal protection and due process rights, and the companion provisions of the Constitution of the State of Florida.  Docs. 1-1, 1-2. Bunny's filed its Amended Complaint on October 25, 2023 (Doc. 1-1), and Defendant Gualtieri removed the suit to federal court on November 6, 2023 (Doc. 1). Defendant Pinellas County consented to the removal. Doc. 9. On November 20, 2023, Bunny's voluntarily dismissed Gualtieri from the suit pursuant to Fed. R. Civ P. 41(a)(1)(A)(i). Doc. 15. According to its filings, Bunny's dismissed the Sheriff from this action based on the Sheriff's confirmation that any ruling from this Court enjoining the challenged legislation would be honored by the Sheriff. Doc. 16 at 2, n.1.

On November 29, 2023, Bunny's filed the instant Motion for Preliminary Injunction. Doc. 16. Pinellas County responded in opposition. Doc. 21. The Court heard argument on the motion initially on February 13, 2024. Doc. 29. At the hearing, it became apparent that disputed issues of fact existed. Accordingly, the Court scheduled an evidentiary hearing, which took place April 2, 2024. Docs. 33–37.

### C.   Testimony and Evidence Presented at Evidentiary Hearing

Plaintiff presented the testimony of three witnesses at the hearing. Defendant did not offer any witnesses, but presented the body camera footage taken from officers who had cited Bunny's for Pinellas County ordinance violations and who directed Bunny's to close at 3:00 a.m.

1.   *Jason Tanner*

Bunny's owner, Jason Tanner, runs the day-to-day operations for the business, which started in 2020 initially as a Gentleman's Club. Ultimately, Bunny's shifted business models finding a need and interest for late night entertainment for clientele after 3:00 a.m. who were interested in keeping the celebration going. He testified that many artists who also work in the service industry are unable to present their music because venues are not open when they get off work. Bunny's is currently operating Thursday through Sundays. It closes at 3:00 a.m., under protest, until this dispute is resolved.

Tanner stated that there is something liberating to be able to extend your night past 3:00 a.m. He claims it's unique because there is a different energy and lack of

4

pressure at that late hour, an element of rebelliousness, stamina, and emotional celebration.  Many of the artists who perform during the late hour are new performers who are presenting experimental shows. Being able to perform after hours increases the acceptance of these performances. There is no exact time that makes performances after 3:00 a.m. better, but the performers during these late hours usually do not have other opportunities to perform before 3:00 a.m. Tanner is the one who decides who performs at Bunny's, and he acknowledged that these artists have been permitted to perform at Bunny's both before and after 3:00 a.m.

Tanner further testified that Bunny's operated without incident under this format of staying open past 3:00 a.m. up until about a year ago when, in approximately March 2023, PCSO officers began showing up and demanding that Bunny's close at 3:00 a.m. per Pinellas County ordinance.

Although it had a bottle club license, Bunny's had a policy in effect that no alcohol was permitted after 3:00 a.m. According to Tanner, Bunny's would diligently enforce the policy by announcing it and then have floor and security staff walk the crowd to ensure patrons threw out their alcohol or left the premises. Tanner acknowledged that there was a way to get alcohol into Bunny's if a customer really wanted to, but if any Bunny's staff saw it, they would request it be thrown out or ask the patron to leave.

Tanner indicated that Bunny's does not offer adult entertainment, but it does have dancers. He described the dancers as more of a "Go-Go" atmosphere, nothing sexually explicit. The performers include DJs, singers, rappers, and comedy acts.

2.   *Cody Hamel*

Cody Hamel is the general manager for Bunny's, and he has been in this position for three months. He testified that Bunny's is currently not open past 3:00 a.m. because it is waiting for permission. He did not work at Bunny's when it was open past 3:00 a.m.

3.   *Gamaliel Bosques*

Gamaliel Bosques has worked as a DJ at Bunny's for the past two years. He also works as a manager and security, as needed. He worked for Bunny's when it was an adult entertainment establishment previously, but then the crowd changed and the patrons were looking for a late-night establishment where they could keep the party going all night long.

Most clubs only allow DJs to play certain music—"Top 40"-type songs. At Bunny's, however, DJs can play whatever they want. Being open past 3:00 a.m. allows Bosques to get experimental with his music. He described Bunny's as the spot to get your music out there if you're a new artist. Bunny's gives local talent the opportunity to perform. At Bunny's, Bosques has the same discretion to play the experimental music he wants to play both before and after 3:00 a.m. He testified that the time of day does not affect the message of the music.

6

The patrons who come to Bunny's for the late-night entertainment are primarily hospital and service workers who work until 3:00 a.m., and Bunny's gives them a place to go when they get off work. It also gives those people who go out in downtown, who have the party mentality, a place where they can keep the party going.

Bosques serves many roles for Bunny's besides DJ, including floor guy, money manager, and supervisor of alcohol. When Bunny's was open past 3:00 a.m., Bosques would announce at 2:45 a.m. that the business was switching to "after hours." Floor guys would patrol the establishment at 3:00 a.m., telling patrons to get rid of their alcoholic drinks or to leave. He acknowledged, however, that the floor guys would not be smelling cups to make sure there was no alcohol in them.

4.    *PCSO Body Camera Footage*

At the hearing, Defendant submitted body camera footage obtained from the PCSO. Plaintiff submitted excerpts of the same body camera footage. Although no witnesses were brought to testify regarding the videos, the parties stipulated to the admission of the videos.

Defendant submits that the videos clearly shows alcohol consumption in Bunny's after 3:00 a.m. It was apparent from the videos that there were cups littered throughout the business and at least one bottle of alcohol was visible on the video at a table in Bunny's after 3:00 a.m. Additionally, a patron commented about how much

he was charged for a drink. One of the officers found it curious that Bunny's security insisted that no cups leave the building, but supposedly the cups only contained juice.[1]

### D.     Motion for Preliminary Injunction (Doc. 16) and Response (Doc. 21)

Bunny's moves for entry of a preliminary injunction, seeking to enjoin the County and its agents from enforcing the 3 a.m. to 8 a.m. closure effected by Sec. 6-29 on the basis that the legislation is unconstitutional. Doc. 16. In support of its request for injunctive relief, Bunny's submits that it satisfies the four elements necessary to obtain an injunction. First, Plaintiff argues it has a substantial likelihood of prevailing on the merits because the challenged legislation (Section 6-29) is unconstitutional because it: (a) was adopted without evidentiary support; (b) contains terms that are unconstitutionally vague and overly broad; (c) is not rationally related to a legitimate government interest, nor does it advance any legitimate government interest; (d) violates the equal protection and due process clauses of the United States Constitution and Florida's Constitution; and (e) violates the First, Fifth,[2] and Fourteenth Amendments of the United States Constitution and the corresponding provisions of Florida's Constitution. Doc. 16 at 16–17.

---

[1] Jason Tanner testified that the purpose of throwing out the cups before patrons left the building was to prevent the cups from being discarded in the parking lot and making a mess.

[2] According to the Amended Complaint, the Fifth Amendment challenge is predicated on the Pinellas County Ordinance being an unlawful taking of private property. Bunny's Fifth Amendment challenge as a basis for injunctive relief is wholly undeveloped on the instant motion, and thus the Court need not address it. *See*, *e.g.*, *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding that the onus is upon the parties to formulate arguments and "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it").

Second, Plaintiff argues that it has been irreparably harmed because a loss of First Amendment freedoms constitutes an irreparable injury. *Id.* at 22–23. Third, Plaintiff argues that a violation of First Amendment freedoms outweighs the government's enforcement of an unconstitutional statute. *Id.* at 23. Fourth, Plaintiff submits that protecting constitutional rights is always in the public's interest. *Id.* In support of its motion, Bunny's proffers declarations from performers and its owner to attest to the need for and importance of the distribution and consumption of late-night entertainment. *See* Docs. 16-1, 16-2, 16-3, 16-4.

In response, Pinellas County argues that Bunny's is unable to meet its burden of establishing a likelihood of success on the merits of its constitutional challenges, and thus it is not entitled to the extraordinary and drastic remedy of an injunction. Doc. 21 at 6–7. Pinellas County rebuts Bunny's argument that there is no legislative predicate or evidentiary support for the legislation by presenting transcripts of County Board Meeting notes regarding the applicable ordinances (Doc. 21-9). Pinellas County next argues the provision is not vague or overbroad as a plain reading of the statute identifies exactly what is a covered business establishment for purposes of the legislation and limiting operations only five out of twenty-four hours is not overly broad. Pinellas County argues the legislation serves a legitimate government interest in the uniform enforcement of its laws. Next, Pinellas County argues there is no due process or equal protection violation because there has been no deprivation of a

constitutionally protected right as the legislation's limitations relate to alcohol, not to expression or association.

Because Bunny's cannot show a likelihood that it will prevail on the merits, Pinellas County submits the Court need not consider the remaining three requirements for injunctive relief. But, even if the Court did find that Bunny's met its burden of establishing a likelihood of success on the merits, Pinellas County argues that the motion still fails because Bunny's cannot show it will suffer an irreparable injury because any alleged injury could be compensated via economic means. Further, Pinellas County contends any threatened injury does not outweigh the harm an injunction would cause Defendant. Finally, Pinellas County argues that granting an injunction is adverse to the public who have an interest in uniform enforcement of laws governing businesses that sell alcohol and insulating communities in the surrounding area from adult entertainment establishments like Bunny's.

### E.    Relevant Ordinances

<u>Sec. 6-26 Definitions</u>

For the purposes of this article, the following definitions of terms shall prevail:

(1)  The term "business establishment" shall include any place of business, such as a golf club, grocery store, drugstore, nightclub, hotel, cafe, bottle club, bar, restaurant, grill, filling station or location where:

    a.  One person pays another for an article or product that is mixed with an alcoholic beverage, or an alcoholic beverage; or

    b.  A drinking container, drink, water, beverage, or other product or article, for a consideration of any kind is sold, dispensed, served or provided, for the purpose of drinking an alcoholic beverage or with the knowledge, actual or implied, that the same will be, or is intended to be, mixed, combined with, or drunk in connection or combination

10

with an alcoholic beverage. Any place of business wherein an alcoholic beverage is carried, stored, dispensed, or consumed by the owner of the beverage or his guest, or stored or dispensed by the owner, operator or employee of such place, shall be deemed a business establishment defined in this paragraph, even if no consideration is paid directly for the dispensing, serving, or otherwise providing of such product or article, so long as the establishment charges any door fee, cover charge, entertainment fee, music fee, exhibition fee, membership fee, storage fee, or any other indirect payment device for admission to the premises.

(2) The term "alcoholic beverage" shall include all beverages containing more than one percent of alcohol by weight.

(3) The term "weekday" shall mean each day of the week except Sunday.

### Sec. 6-27 Penalty for violation of article

Any person, firm or corporation, or owner, lessor, partner, operator, manager, or employee of any business establishment as defined in this article violating any of the provisions of this article shall be deemed, upon conviction thereof, guilty of a misdemeanor and shall be punished therefor as provided by law.

### Sec. 6-28 Purpose and Intent

The purpose of this article is to provide uniform regulation of all establishments and persons in Pinellas County dealing directly or indirectly with the sale, dispensing or consumption of alcoholic beverages. Uncertainty and confusion in the applicable laws now exist which have resulted in evasions of the law and rendered enforcement thereof impossible. It is the legislative intent that this article apply to all establishments and persons in any manner dealing with the sale, dispensing or consumption of alcoholic beverages, that the owners or operators of such establishments shall be notified hereby that they are not exempted from any zoning and land use prohibitions and regulations in force in the county unincorporated area or in the incorporated town or city where such establishments are located, that owners, operators, employees, patrons and others controlling, working in, or consuming alcohol on the premises of such establishments shall be notified hereby of the conduct and activities prohibited by this article, and the penalties for any violation thereof, and that this article be liberally construed as to effectuate this purpose.

Sec. 6-29 Closing Hours

> All business establishments in Pinellas County, licensed or unlicensed, dealing in alcoholic beverages, public or private, either directly or indirectly, shall remain closed from the hours of 3:00 a.m. to 8:00 a.m. on each day of the week unless any municipality in Pinellas County establishes shorter opening hours as provided in section 6-31 of this article.

## II.   LEGAL STANDARD

A party seeking entry of a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quotations omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation omitted). The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).

## III.   DISCUSSION

Bunny's seeks injunctive relief, arguing that Section 6-29 is unconstitutional because the ordinance violates the First Amendment's right of freedom of expression.

12

As a starting point, the Court must determine whether the First Amendment protects the conduct at issue in the challenged statute. Bunny's submits that it desires to present a message of artistic expression through experimental music to a different audience who goes out after 3:00 a.m. and the challenged statute precludes that expression.[3] Indeed, the Supreme Court has recognized that the First Amendment protection extends to music, as a form of speech and expression, from governmental censorship and control. *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1265 (11th Cir. 2007) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989)).

The legislation challenged here, however, does not regulate speech or expression such that it implicates the First Amendment. Section 6-29 is a classic closing time ordinance governing alcohol, specifically "business establishments in Pinellas County, licensed or unlicensed, dealing in alcoholic beverages . . . ." Pinellas County Ordinance 6-29 uniformly requires Pinellas County business establishments dealing in alcohol, with a few limited exceptions, to close at 3:00 a.m. Although Bunny's does not serve alcohol, it has a bottle club license, which means that its patrons may bring alcohol onto Bunny's premises to be consumed there. Thus, Bunny's, like other Pinellas County business establishments that allow alcohol to be

---

[3] Pinellas County refutes Bunny's portrayal of itself as a "music venue," instead arguing that Bunny's is primarily a strip club as evidenced by its own social media posts. Doc. 21 at 3. To the extent that Bunny's is determined to be an adult entertainment venue, the Eleventh Circuit has recognized that "[c]ombating the harmful secondary effects of adult businesses, such as increased crime and neighborhood blight, is a substantial government interest." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50–52 (1986)).

consumed on premises, is required to close at 3:00 a.m. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (holding "First Amendment is not implicated by the enforcement of a public health regulation of general application").

Bunny's cites to the Supreme Court's opinion in *44 Liquormart, Inc. v. Rhode Island*, 116 S. Ct. 1495 (1996), for the proposition that the Twenty-First Amendment and the government's right to regulate alcohol does not allow restrictions on First Amendment rights. Doc. 16 at 14. The challenged statute in *44 Liquormart* specifically sought to control speech related to alcohol, banning advertising retail alcoholic beverage prices except at the place of sale. *Id.* at 489. The plaintiff liquor retailer sought a declaratory judgment that Rhode Island laws banning such advertisement violated the First Amendment because it did not directly advance the State's asserted interest in the promotion of temperance and was more extensive than necessary to serve that interest. Ruling in favor of the retailer, the Court held Rhode Island's statutory prohibition against advertisements that provide the public with accurate information about retail prices of alcoholic beverages is invalid. *Id.*

In contrast, the challenged ordinance here does nothing to regulate speech or expression. Notwithstanding Bunny's arguments to the contrary, Section 6-29 does not censor or control musical or creative expression. Significantly, the performers' ability to express themselves artistically was not precluded at Bunny's. As testified by Tanner and Bosques, the performers at Bunny's were given discretion to present their creative expression at any time. Whereas other clubs limit the type of music that can

14

be played, Bunny's prides itself in allowing new performers to express themselves and try out their music to Bunny's audience, and the time of day does not affect that artistic expression. Thus, because the legislation does not implicate the First Amendment, Bunny's challenge on this basis fails.

In evaluating a constitutional challenge, courts must determine what type of scrutiny should be applied in the analysis. The parties agree that the challenged ordinance is content-neutral legislation to which intermediate scrutiny applies (Doc. 16 at 19; Doc. 21 at 7). Closing time ordinances have been routinely regarded as being content neutral. *See generally Lexra, Inc. v. City of Deerfield Beach*, 593 F. App'x 860 (11th Cir. 2014). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Rock Against Racism*, 491 U.S. at 791 (citation omitted). Pinellas County's 3:00 a.m. closing ordinance is content-neutral because it "applies equally to all, and not just to those with a particular message or subject matter in mind." *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1254 (11th Cir. 2004) (citation omitted). "If the ordinance is a content-neutral time, place, and manner restriction, it is subject to intermediate scrutiny—that is, it must not restrict speech substantially more than necessary to further a legitimate government interest, and it must leave open adequate alternative channels of communication." *Solantic, LLC v. City of Neptune Beach*, 410

15

F.3d 1250, 1258 (11th Cir. 2005).[4] Thus, a standard of intermediate scrutiny would apply to the Pinellas County closing ordinance. *See City of L.A. v. Almeda Books*, 535 U.S. 425, 430 (2002) (internal citations omitted).

In support of the legitimate governmental interest, Pinellas County points to the ordinance's stated purpose and a discussion of the legislative history. Regarding adequate alternative channels of communication, both Tanner and Bosques made clear, the performers at Bunny's were permitted to present their artistic expressions both before and after 3:00 a.m., and thus closing at 3:00 a.m. did not preclude their musical expressions. And, significantly, the ordinance does not regulate Bunny's ability to engage in protected expression or otherwise dictate the type of musical performers that can play during normal operating hours before 3:00 a.m. Additionally, for those performers in the service industry who work late hours on the weekends, there is nothing preventing them from performing other nights of the week, but Bunny's chooses to be open only Thursday through Sunday. Lastly, if Bunny's operated without a bottle license, it could remain open twenty-four hours and allow the presentation of musical performances all day and night. Thus, even if the challenged legislation implicates the First Amendment, the law is narrowly tailored to

---

[4] In contrast, ordinances that are content based are "subject to strict scrutiny, meaning that it is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest." *Solantic*, 410 F.3d at 1258 (citation omitted).

16

satisfy intermediate scrutiny under the time, place, and manner test. Plaintiff fails to show a likelihood of success on its First Amendment challenge.

Bunny's raises several other constitutional challenges to Section 6-29 which the Court will address in turn below.

### A.    Adopted without predict or evidentiary support

Bunny's argues the ordinance is unconstitutional because it was adopted without legislative predicate. Specifically, Bunny's submits that Pinellas County failed to produce relevant evidence that the legislation advances a legitimate government interest or that Plaintiff's constitutionally protected expression results in any alleged adverse or negative secondary effects. Doc. 16 at 17–18. Bunny's further argues there has been no showing that the restrictions are reasonable or necessary. The Court disagrees. As argued by Pinellas County, the ordinance does further a legitimate government interest in that it supports consistency in the closing times of businesses dealing in alcoholic beverages. The ordinance's purpose is set forth in the legislation. *See* Pinellas County Ordinance Section 6-28 ("The purpose of this article is to provide uniform regulation of all establishments and persons in Pinellas County dealing directly or indirectly with the sale, dispensing or consumption of alcoholic beverages."). The need for the uniformity was addressed in County Board Meeting minutes in which the history behind the uniformity requirement was discussed, including law enforcement's concern of preventing inebriated patrons from driving across County from one bar closure to the next later bar closure. *See* Doc. 21-9.

17

Although Bunny's represents that it makes patrons leave or throw out their alcohol at 3:00 a.m., the PCSO body camera footage presented at the evidentiary hearing revealed the presence of alcohol at Bunny's after 3:00 a.m. Additionally, Bunny's owner acknowledged that if patrons wanted to bring alcohol in, they would find a way. Bosques also acknowledged the floor guys were not smelling cups to see if they contained alcohol.[5] Thus, despite Bunny's internal policy that no alcohol was permitted after 3:00 a.m., the evidence and testimony demonstrate that alcohol was accessible to Bunny's patrons after 3:00 a.m. The Court finds that Section 6-29 furthers a legitimate government interest.

### B.    Contains terms that are unconstitutionally vague and overly broad

Bunny's next contends the ordinance is unconstitutionally vague and overbroad. Bunny's argues the legislation's sweeping definition of "Business Establishment" is unlawful because it subjects businesses to criminal punishment for selling any item that could be mixed with alcohol between the hour of 3:00 a.m. and 8:00 a.m. Bunny's argues the ordinance does not further a substantial government interest and is not narrowly tailored to do so. Doc. 16 at 17–18.

---

[5] The body camera footage captured statements by patrons and the PCSO officers at the scene, which support the conclusion that alcohol was on the premises after 3:00 a.m. Plaintiff contends the statements are hearsay. However, the parties stipulated to the admission of the body camera footage for purposes of the evidentiary hearing. Moreover, in deciding whether a party has met its burden, "[a] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotations and citation omitted)

18

Pinellas County responds that the plain language of the legislation is clear that business establishments dealing in alcohol, with a few exceptions, must close at 3:00 a.m. Regarding the governmental interest, Pinellas County submits that the stated purpose and intent of the statute is to provide uniformity in enforcement and clear guidance to law enforcement. As for any claim of overbreadth, Pinellas County argues that limiting closure to only five hours of a 24-hour day is not overly broad. As noted by Pinellas County, if Bunny's ceased allowing alcohol for on-premises consumption, it could remain open continuously.

A law is impermissibly vague when "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Jordan v. De George*, 341 U.S. 223, 231–32 (1951) (procedural due process requires laws give "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."). The ordinance at issue here is directed to business establishments dealing in alcohol and requires that they close at 3:00 a.m. A person of ordinary intelligence can understand the ordinance. On this motion, Bunny's fails to demonstrate otherwise. Further, the Court agrees that the ordinance is not substantially broader than necessary to achieve the government's interest because it only requires Bunny's to be closed for a five-hour period of time in a 24-hour day. In considering this factor, "judges are not policymakers, and the Ordinance will not be struck down simply because a court

19

concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.*" Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1247 (11th Cir. 2022).  Finding Section 6-29's closure window of time not substantially broader than necessary, the Court need not engage in a "line-drawing exercise." *See id.* Plaintiff fails to show a substantial likelihood of success on this challenge.

### C.    Lacks rational relationship to legitimate government interest

Bunny's constitutional challenge that the ordinance is not rationally related to any legitimate government interest similarly fails. As stated above, on its face, the purpose and intent of the ordinance clearly identifies a legitimate government interest in the uniform enforcement of the County's laws and to eliminate uncertainty and confusion in the application of the law.

### D.    Violates the equal protection and due process clauses

On its equal protection and due process challenges, Bunny's argues that violation of the ordinance inappropriately criminalizes the proscribed behavior. To show a denial of procedural due process requires proof of three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Pinellas County submits that Bunny's fails on the first element because there is no deprivation of a constitutionally protected right. As discussed in more detail above, the Court agrees. This closing time ordinance governs alcohol, not First Amendment speech or

expression. And, as testified to by the witnesses, performers at Bunny's were not precluded from presenting their artistic expressions before 3:00 a.m.

Pinellas County further responds that Bunny's argument about the legislation imposing criminal sanctions without due process fails because it ignores Administrative Order No. 2018-068 PI-CTY, which states that the sole and exclusive penalty for a violation of a local ordinance is a fine and court costs. *See* Doc. 21-10. As noted by Pinellas County, the penalty provision of Section 6-27 making a violation of the ordinance a misdemeanor is confined to a separate subsection which, if necessary, could be severed. *See* Doc. 21 at 14 (citing the severability clause of Section 1-7 of the Pinellas County Code).  Considering the Administrative Order's limitation of penalties and the severability of Section 6-27, the Court finds Bunny's arguments of likelihood of success on the merits of its due process challenge to be unavailing.

## IV.    CONCLUSION

Plaintiff fails to carry its burden of demonstrating a substantial likelihood of success on the merits on its constitutional challenges. The failure to establish an element, such as a substantial likelihood of success on the merits, warrants denial of the request for preliminary injunctive relief and obviates the need to discuss the remaining elements. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)).  Accordingly, it is

**ORDERED**:

1.      Plaintiff's Motion for Preliminary Injunction (Doc. 16) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on July 9, 2024.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any